IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CROSETTI BRAND, M02369,** | ) |
| | ) |
| **Plaintiff,** | ) |
| vs. | ) Case No. 22-cv-01463-SMY |
| | ) |
| **ROB JEFFREYS,** | ) |
| **MAJOR CLELAND,** | ) |
| **MAJOR LAWLESS,** | ) |
| **BOBBY JOHNSON,** | ) |
| **C/O COIN,** | ) |
| **ERIC WANGLER,** | ) |
| **and JOHN DOE 1,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Crosetti Brand, an inmate in the custody of the Illinois Department of Corrections (IDOC) and currently incarcerated at Menard Correctional Center, filed the instant *pro se* civil rights action, pursuant to 42 U.S.C. § 1983. In the Amended Complaint,[1] Plaintiff asserts claims for federal constitutional deprivations and Illinois state law violations resulting from the defendants' alleged use of excessive force against him at Pinckneyville Correctional Center. (Doc. 21). The Amended Complaint must be screened under 28 U.S.C. § 1915A, which requires the dismissal of any portion that is legally frivolous or malicious, fails to state a claim for relief, or seeks money damages from an immune defendant. 28 U.S.C. § 1915A(a)-(b).

---

[1] Plaintiff's Amended Complaint (Doc. 21) is the fourth version he has filed to date. Plaintiff filed his original Complaint on July 11, 2022 (Doc. 1), a First Amended Complaint on August 3, 2022 (Doc. 10), and a Second Amended Complaint on November 7, 2022 (Doc. 16). The Amended Complaint filed December 12, 2022 (Doc. 21) supersedes and replaces all prior versions and serves as the operative complaint in this case. The Court will refer to it herein as "Amended Complaint." (Doc. 21).

## Amended Complaint

Plaintiff makes the following allegations in the Amended Complaint (Doc. 21, pp. 12-19): While Plaintiff was housed in Pinckneyville's segregation unit (Cell 31, A Wing, 5 House) on April 12, 2022, John Doe approached Plaintiff's cell and ordered him to cuff up through the chuck hole. (*Id*. at 12). Plaintiff complied with the order. Even so, Doe yanked his handcuffs and lead chains so hard that Plaintiff sustained painful abrasions to his wrists. Wangler was present but failed to intervene. (*Id*. at 13). Wangler and Coin then escorted Plaintiff to the prison health care unit for medical attention and an interview by internal affairs in 6 House.

Once inside 6 House, Wangler shoved Plaintiff with such force that he fell to the floor while still in handcuffs. Plaintiff struck his head against a wall and suffered pain and injuries to his head and body. (*Id*.). Wangler and Coin escorted Plaintiff to the health care unit, where Sergeant Johnson met them, and a nurse treated Plaintiff's wrist and head injuries. Surveillance cameras located in 6 House captured these events between 7 - 8:30 a.m. (*Id*. at 14).

Wangler and Coin then escorted Plaintiff to the mental health office, where Wangler shackled his ankles and chained him to the wall while Rose Loos conducted a mental health assessment. (*Id*. at 15). Afterwards, Loos falsely informed Wangler, Coin, Johnson, Lawless, and Cleland that Plaintiff spit in her face during the interview. Upon hearing this, the officers approached Plaintiff and administered two bursts of pepper spray that hit his face and chest. They punched and kicked him in the head, face, body, ribs, and sternum and dragged him across the floor by his shackles. (*Id*. at 16). Cleland placed a "spit hood" over Plaintiff's head to hide all physical injuries to his face. As the officers removed him from the health care unit, they shoved his head, face, and body against the exit door and caused more pain. The five officers denied

Plaintiff medical care for his injuries. Surveillance footage in the hallway located by the mental health office captured them entering the office where Plaintiff was held.

Once they returned to 5 House, Wangler and Cleland placed Plaintiff inside the shower and chained him to the shower door gate in a "lynching style" position. (*Id*. At 17). He was left there for two hours without medical attention. After Cleland and Wangler returned and unchained him, Plaintiff was transferred to Menard Correctional Center for a staff assault. Surveillance cameras in 5 House captured these events between 7 a.m. - noon. (*Id*. at 18).

Based on the allegations in the Amended Complaint, the Court designates the following claims in this *pro se* action:

| | |
|---|---|
| Count 1: | Defendant John Doe used excessive force against Plaintiff when cuffing him through the chuck hole of Cell 13 in A Wing of 5 House on April 12, 2022, in violation of the Eighth Amendment. |
| Count 2: | Defendant Wangler failed to intervene and stop the use of excessive force by Defendant John Doe on April 12, 2022, in violation of the Eighth Amendment. |
| Count 3: | Defendant Wangler used excessive force against Plaintiff in 6 House between 7 – 8:30 a.m. on April 12, 2022, when shoving the handcuffed Plaintiff with such force that he fell to the floor, hit his head, and injured his body, in violation of the Eighth Amendment. |
| Count 4: | Defendants Wangler, Coin, Johnson, Lawless, and Cleland used excessive force against Plaintiff in the mental health unit on April 12, 2022, when they administered two bursts of pepper spray to his face and chest, punched and kicked him, dragged him by his shackles, and placed a "spit hood" over his head to conceal his injuries, in violation of the Eighth Amendment. |
| Count 5: | Defendants Wangler, Coin, Johnson, Lawless, and Cleland exhibited deliberate indifference to Plaintiff's serious medical needs when they refused him treatment for injuries they inflicted in the mental health unit on April 12, 2022, in violation of the Eighth Amendment. |
| Count 6: | Defendants Wangler and Cleland used excessive force against Plaintiff by chaining him to the shower door gate in a "lynching style" position for two hours in 5 House, in violation of the Eighth Amendment. |

>Count 7: Defendants John Doe, Wangler, Coin, Johnson, Lawless, and Cleland assaulted and/or battered Plaintiff on April 12, 2022, in violation of Illinois state law.
>
>Count 8: Idemnification claim against Defendants under Illinois state law.

**Any other claim that is mentioned in the Amended Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under *Twombly*.**[2]

### Discussion

### Counts 1, 2, 3, 4, and 6

The Eighth Amendment prohibits the wanton and unnecessary infliction of pain on incarcerated persons. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); U.S. CONST. Amend VIII. This includes the unauthorized use of force against an inmate by a state actor or the failure to protect an inmate from its use by an officer or another inmate. *Id.*; *Hendrickson v. Cooper*, 589 F.3d 887, 889-90 (7th Cir. 2009). An Eighth Amendment excessive force claim arises when a state actor "use[s] force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson*, 589 F.3d at 890 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). This occurs when an officer inflicts harm or knowingly fails to protect an inmate from the infliction of harm. Construed liberally, the allegations articulate Eighth Amendment claims against the officers named in connection with Counts 1, 2, 3, 4, and 6.

### Count 5

An Eighth Amendment claim may arise from an inmate's denial of necessary medical care. *Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012). To state such a claim, a plaintiff must allege: (1) a serious medical condition (objective element); and (2) an official's deliberate indifference to that condition (subjective element). *Id.* Plaintiff describes several injuries he sustained to his head,

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

face, and body from numerous staff assaults that occurred on April 12, 2022. He also sets forth sufficient allegations to support a claim of deliberate indifference to these injuries against Defendants Wangler, Coin, Johnson, Lawless, and Cleland.

### Count 7

The Court next turns to the state law claims for assault and battery. 28 U.S.C. § 1367.[3] Illinois law defines a civil assault as an intentional, unlawful offer of corporal injury by force, or force unlawfully directed, under circumstances that create a well-founded fear of imminent peril coupled with the present ability to effectuate the attempt if not prevented. *Yang v. Hardin*, 37 F.3d 282, 286 (7th Cir. 1994). A battery occurs when a person "intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." *Smith v. City of Chicago*, 242 F.3d 737, 744 (7th Cir. 2001) (quoting 720 ILL. COMP. STAT. 5/12–3(a)). The assault and battery claim(s) in Count 7 shall receive further review against Defendants Doe, Wangler, Coin, Johnson, Lawless, and Cleland based on the same events giving rise to the Eighth Amendment claims against them.

### Count 8

Plaintiff's allegations regarding a claim for indemnification are so lacking under the minimal pleading standards set forth in *Twombly*, that the Court cannot analyze this claim against any defendant. Therefore, Count 8, will be dismissed for failure to state a claim for relief.

### **Identification of John Doe**

Although Plaintiff will be allowed to proceed with Counts 1 and 7 against Defendant John Doe, this defendant must be identified before service of the Amended Complaint can be made on

---

[3] This statute authorizes a federal court to exercise supplemental jurisdiction over state law claims that form the same case or controversy as claims over which the federal court has original jurisdiction.

him. Plaintiff will have the opportunity to engage in limited discovery to ascertain the officer's identity. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). The Warden of Pinckneyville Correctional Center shall be added as a defendant, in his or her official capacity only, for purposes of identifying this individual by name. Once the name of Defendant John Doe is discovered, Plaintiff shall file a motion to substitute the newly identified defendant in place of the generic designations in the case caption and throughout the Amended Complaint.

### Request for Injunctive Relief

Plaintiff names former IDOC Director Rob Jeffreys in connection with his request for permanent injunctive relief. Plaintiff seeks an order transferring him to a medium security prison and an order requiring prison officials to wear body cameras. However, Plaintiff offers no reason for his transfer request and sets forth no allegations suggesting that he will return to Pinckneyville and/or face the same conditions he describes in the Amended Complaint. As such, this request is **DENIED without prejudice**.

### Disposition

The Amended Complaint (Doc. 21) survives screening pursuant to 28 U.S.C. § 1915A and shall proceed against the below-listed defendants, in their individual capacities, as follows:

- **COUNT 1** will proceed against **JOHN DOE (once identified)**;
- **COUNTS 2** and **3** will proceed against **WANGLER**;
- **COUNTS 4** and **5** will proceed against **WANGLER, COIN, JOHNSON, LAWLESS,** and **CLELAND**;
- **COUNT 6** will proceed against **WANGLER** and **CLELAND**;
- **COUNT 7** will proceed against **JOHN DOE (once identified), WANGLER, COIN, JOHNSON, LAWLESS,** and **CLELAND**.

**COUNT 8** and **ROB JEFFREYS** are **DISMISSED** without prejudice because the

Amended Complaint states no claim for relief as to either.

The **WARDEN of PINCKNEYVILLE** is **ADDED** as a defendant, in his or her official capacity only, for purposes of identifying Defendant John Doe.

The Clerk shall prepare for Defendants **WARDEN of PINCKNEYVILLE CORRECTIONAL CENTER (official capacity only), JOHN DOE (once identified), WANGLER, COIN, JOHNSON, LAWLESS,** and **CLELAND**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint (Doc. 21), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

The Warden of Pinckneyville Correctional Center must only file a notice of appearance and need not file an answer or other response to the Amended Complaint. Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though he was granted *in forma pauperis* status. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**Consistent with the above, the Clerk of Court is DIRECTED to ADD the WARDEN OF PINCKNEYVILLE CORRECTIONAL CENTER (official capacity only) and ENTER the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

**IT IS SO ORDERED.**

**DATED:    May 16, 2023**                              *s/ Staci M. Yandle*
                                                         **STACI M. YANDLE**
                                                         **United States District Judge**

**Notice to Plaintiff**

Once identified, the Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Amended Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Amended Complaint. It will likely take at least **60 days** *from the date they are served with this lawsuit* to receive the Defendants' Answers, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.